## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADVANCEMENT PROJECT,<br>1220 L Street, N.W.<br>Suite 850<br>Washington, D.C. 20005        )<br>          Plaintiff,       )<br>v.         )<br>UNITED STATES DEPARTMENT<br>OF HOMELAND SECURITY,<br>245 Murray Lane, S.W.<br>Washington, D.C. 20536, and<br><br>UNITED STATES IMMIGRATION<br>AND CUSTOMS ENFORCEMENT,<br>500 12th Street, S.W.<br>Washington, D.C. 20536<br><br>       Defendants. | Civil Action No. 19-cv-764 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory and injunctive relief to compel the disclosure and release of agency records requested by Plaintiff Advancement Project from Defendants United States Department of Homeland Security ("DHS") and United States Immigration and Customs Enforcement ("ICE"). The documents in question relate to collaboration between State and local law enforcement participation in federal immigration enforcement and the establishment of the Victims of Immigration Crime Engagement ("VOICE") Office.

2.      DHS and ICE have failed to disclose and release responsive records. Advancement Project seeks injunctive and other appropriate relief.

**JURISDICTION AND VENUE**

3.       This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to under 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(E)(iii).

4.       Venue is appropriate in the District of Columbia pursuant to 5 U.S.C. § 552 (a)(4)(B) and 28 U.S.C. § 1391(e).

**PARTIES**

5.       Plaintiff Advancement Project is a non-profit, next generation, multi-racial civil rights organization. Rooted in the great human rights struggles for equality and justice, Advancement Project exists to fulfill America's promise of a caring, inclusive, and just democracy. Advancement Project provides legal, organizing, and communications support to grassroots organizations across the country in its Immigrant Justice Project, Power and Democracy Program, Justice Project, and Opportunity to Learn Project. Since 1999, Advancement Project has regularly written reports to educate the public on issues such as voting rights, school discipline, restoration of civil rights for returning citizens, and the criminalization of undocumented persons. Advancement Project staff have testified before State and federal legislative bodies on civil rights and racial justice. Advancement Project holds press conferences, issues press releases, disseminates its reports on its website, http://www.advancementproject.org, and through its social media platforms.

6.       Defendant DHS is a department within the executive branch of the United States government. It is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, D.C. Upon information and belief, DHS has possession, custody, and control over the records Plaintiff seeks.

7.        Defendant ICE is a component agency of DHS.  It is an agency within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, D.C. Upon information and belief, ICE has possession, custody, and control over the records Plaintiff seeks.

## STATEMENT OF FACTS

8.        Since January 2017, the current administration has introduced numerous changes in immigration policy, including declarations of its intent to increase State and local law enforcement collaboration with federal immigration enforcement.[1] Specifically, on January 25, 2017, President Donald J. Trump issued an executive order on interior enforcement entitled Enhancing Public Safety in the Interior of the United States ("Interior EO"), expressly stating that "[i]t is the policy of the executive branch to empower State and local law enforcement agencies across the country to perform the functions of an immigration officer in the interior of the United States to the maximum extent permitted by law."[2] The Interior EO also reinstated the Secure Communities Program and Section 287(g) agreements.[3]

---

[1] *See* Border Security and Immigration Enforcement Improvements, Exec. Order No. 13767, 82 Fed. Reg. 8793 (Jan. 25, 2017); Enhancing Public Safety in the Interior of the United States, Exec. Order No. 13768, 82 Fed. Reg. 8799 (Jan.  25, 2017) ("Interior EO"); Protecting the Nation from Foreign Terrorist Entry Into the United States, Exec. Order No. 13780, 82 Fed. Reg. 13209 (Mar. 9, 2017).

[2] Sec. 8, Interior EO, Exec. Order No. 13768, 82 Fed. Reg. 8799, 8800 (Jan. 25, 2017).

[3] Exec. Order No. 13768, 82 Fed. Reg. 8799 (Jan. 25, 2017). The Secure Communities Program "uses a federal information-sharing partnership between DHS and the Federal Bureau of Investigation (FBI) that helps to identify in-custody aliens without imposing new or additional requirements on state and local law enforcement." *See* Secure Communities, https://www.ice.gov/secure-communities (last visited Mar. 15, 2019). Described as "one of ICE's top partnership initiatives," the Section 287(g) Program "allows a state or local law enforcement entity to enter into a partnership with ICE, under a joint Memorandum of Agreement (MOA), in order to receive delegated authority for immigration enforcement within their jurisdictions." *See* Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act, https://www.ice.gov/287g (last visited Mar. 15, 2019).

9.      Significantly, the Interior EO called for the creation of a new federal agency that would provide services to victims of crimes committed by "removable aliens" and issue quarterly reports "studying the effects of the victimization by criminal aliens."[4] Thereafter, in an implementing memorandum dated February 20, 2017, the Secretary of DHS established this new federal agency as the Victims of Immigration Crime Engagement ("VOICE") Office.[5]

10.      The VOICE Office immediately stirred public controversy. Commentators across the nation condemned it as "political bait," [6] "a complete and utter duplication" of existing Department of Justice resources for crime victims,[7] with no purpose other than to "give 'voice' to race-baiting."[8] A former Coordinator for Counterterrorism at the U.S. State Department wrote that the VOICE Office "has more to do with propagating [President Trump's] view of foreigners as dangerous than it does with meeting a need . . . Wasn't this going to be the administration that cut down on duplication and waste?"[9]

---

[4] *Id.*

[5] John Kelly to Kevin McAleenan, *et. al,* Enforcement of the Immigration Laws to Serve the National Interest (Feb. 20, 2017), https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Implementing-the-Presidents-Border-Security-Immigration-Enforcement-Improvement-Policies.pdf (last visited Mar.. 15, 2019).

[6] Suzanne Gamboa, *Advocates: Trump's Immigrant Crime Office Is Political Bait*, NBC News (Mar. 1, 2017), https://www.nbcnews.com/news/latino/advocates-trump-s-immigrant-crime-office-political-bait-n727726 (last visited Mar.. 15, 2019) ("Gamboa Article").

[7] Gamboa Article.

[8] *Giving 'voice' to race-baiting*, The Baltimore Sun Editorial Board (Mar. 1, 2017), https://www.baltimoresun.com/news/opinion/editorial/bs-ed-trump-immigrants-20170301-story.html (last visited Mar.. 15, 2019).

[9] Daniel Benjamin, *Donald Trump Changed His Tone But Not His Message: Be Afraid*, TIME (Mar. 2, 2017), http://time.com/4688628/donald-trump-congress-fear/ (last visited Mar.. 15, 2019).

11.      The VOICE Office, along with the declarations of the administration's intent to increase State and local law enforcement cooperation in federal immigration enforcement, also caused immediate alarm and concern among immigrant and refugee community members and their advocates.[10] In the Commonwealth of Virginia, one such non-profit community advocacy organization – Tenants and Workers United ("TWU") – whose membership is directly impacted by immigration enforcement, began compiling research on how the aforementioned changes in immigration enforcement policy were playing out in its State.

12.      Based in Northern Virginia, TWU "builds power of low-income communities of color – primarily immigrants – to create changes that positively impact the quality of our lives."[11] From its origin during the 1980s as a community organization serving the Arlandria-Chirilagua neighborhood in the City of Alexandria, TWU has since "expanded to city-wide issues such as access to healthcare and excellent public education, and has now grown into a regional organization that is fighting anti-immigrant policies in Prince William County and supporting day laborers in Fairfax County."[12] Through the years, it has "won more than $100 million in living wage jobs, affordable housing, health care, public education resources, and other community benefits."[13] Advancement Project has provided legal, advocacy, and communication support to TWU for over a decade.

---

[10] *See* Ines Valdez, Mat Coleman, and Amna Akbar, *Donald Trump says he's just enforcing immigration law. But its not that simple*. Wash. Post. (Nov. 7, 2017), https://www.washingtonpost.com/news/monkey-cage/wp/2017/11/06/donald-trump-says-hes-just-enforcing-immigration-law-but-its-not-that-simple/?utm_term=.83ada95268ad (last visited Mar. 15, 2019).
[11] Tenants and Workers United, https://www.tenantsandworkers.org (last visited Mar.15, 2019).
[12] *Id.*
[13] *Id.*

13.      TWU's initial research on immigration enforcement in Virginia revealed numerous

instances of immigrants transferred to ICE custody after local police encounters. TWU

became concerned about the unlawful treatment of their constituents by local law

enforcement agencies as well as local law enforcement agencies' participation in

Intergovernmental Service Agreements and other collaborations with ICE, including

collaborations that now involved the new VOICE Office. TWU was in communication

with Advancement Project resulting in Advancement Project's FOIA Request. This

research directly informs TWU's efforts to stop overreach by federal and State law

enforcement agencies and to reduce unfair treatment and over-policing of immigrant

communities in Virginia.

## Advancement Project's FOIA Request to ICE and DHS

14.      On January 5, 2018, Advancement Project submitted a FOIA Request to ICE and

DHS ("1/5/2018 FOIA Request" or "FOIA Request") seeking records in two general

categories: (1) records related to local and State law enforcement collaboration with ICE

in the Commonwealth of Virginia; and (2) records related to the VOICE Office. The full

request reads as follows:

(1)      All Intergovernmental Service Agreements (IGSAs) in the Commonwealth of
         Virginia, that ICE has ever entered into;

(2)      From January 2016 through November 2017, any and all inspection records for
         IGSAs in Virginia;

(3)      All memoranda, reports, correspondence, communications, or other documents
         regarding compliance with contractual obligations with ICE for IGSAs;

(4)      For the period of January 2016 through November 2017, all memoranda, guidance,
         reports, correspondence, communications, or other documents received from or
         sent to the City of Alexandria Police Department, City of Alexandria Sheriff's
         Office, Arlington County Sheriff's Office, Arlington County Police Department,
         Prince William County Sheriff's Office, and Prince William County Police

Department, regarding procedures for arrest, detention, admittance, bail/bonds and release, including detainers, warrants, booking information or other records for immigrants, with identifying information redacted as required;

(5)    For the period of January 2016 through November 2017, a list of all cases of individuals, with identifying information redacted as required, transferred to ICE custody by the City of Alexandria Police Department, City of Alexandria Sheriff's Office, Arlington County Sheriff's Office, Arlington County Police Department, Prince William County Sheriff's Office, and Prince William County Police Department;

(6)    For the period of January 2017 through November 2017, all individuals for whom ICE issued detainers in the City of Alexandria Police Department, City of Alexandria Sheriff's Office, Arlington County Sheriff's Office, Arlington County Police Department, Prince William County Sheriff's Office, and Prince William County Police Department, including dates of and reason for custody, detention, transfer or arrest, countries of origin, immigration status or disposition of immigration proceedings, with identifying information redacted as required;

(7)    All memoranda, reports, including a copy of the Standard Operating Procedures, operations manual, and/or operations guidelines for the Victims of Immigrant Crime Engagement (VOICE) Office;

(8)    A copy of training materials and/or policy memoranda for VOICE Office staff on how the VOICE Office works, how to screen calls, intake procedures for the VOICE Office, what questions a VOICE Employee asks when someone calls the VOICE Hotline, referral procedures from the VOICE Office to ICE or U.S. Customs and Border Protection, or other sub-components within DHS;

(9)    For the period of April 2017 through November 2017, call logs to the VOICE office involving cases, immigrants or crime victims residing in Virginia, with identifying information redacted as required;

(10)    For the period of April 2017 through November 2017, individuals referred for apprehension, arrest, or detention from the VOICE Office residing in Virginia, broken down by individual as follows:

        (a) Unique identifier for individual (in lieu of A number)
        (b) The individual's country of origin;
        (c) The individual's age;
        (d) The individual's gender;
        (e) Description of reason for referral to VOICE Office
            1. Example, if for an arrest, specify the charges arrested.

15.      Advancement Project also requested a fee waiver pursuant to 5 U.S.C. §
552(a)(4)(A)(iii). Under this provision, a requesting party is entitled to a waiver of all costs
when disclosure of the information is "likely to contribute significantly to public
understanding of the operations or activities of the government and is not primarily in the
commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). *See also* 6 C.F.R. §
5.11(k). Additionally, Advancement Project sought expedited processing of the FOIA
Request under 5 U.S.C. § 552(a)(6)(E)(i).

16.      The requested records will educate the public about the operations and workings of
the VOICE Office and enrich the public debates on the role of the VOICE Office in public
discourse on immigration policy, federal government waste and agency duplication, and
crime victim assistance. The requested records will also enrich the public debates on the
role of State and local authorities in federal immigration enforcement. The requested
records will  support the advocacy work of TWU in Virginia and similar organizations
throughout the country with primary constituencies of persons directly impacted by
immigration enforcement policy. The requested records add to the "fund of information"
that individuals and communities will use to inform their political opinions, actions and
advocacy related to these important federal immigration policy changes.

17.      The requested records are not primarily in the commercial interest of Advancement
Project. The records would be disseminated without cost to TWU and members of the
public and would not be used for any commercial gain as Advancement Project would
provide public access to the documents, summarize the policy implications, and provide
guidance on how impacted organizations and their constituents are being affected by these
changes in immigration policy. Advancement Project also anticipates producing its own

materials summarizing the requested records in a report, creating social media posts of the records, and posting all such information on its website.

18.        Advancement Project substantiated in its FOIA Request that as requester it met the standards for a waiver of all costs and for expedited processing.

**Correspondence with ICE and DHS**

19.        On January 10, 2018, in a letter sent via electronic mail ("1/10/2018 DHS Letter"), DHS acknowledged receipt of Advancement Project's 1/5/2018 FOIA Request and referred it to ICE "due to the subject matter of [the FOIA Request]." According to DHS FOIA regulations, an agency "may refer the responsibility for responding to [a] request or portion of the request to the component or agency" deemed appropriate. *See* 6 CFR Part 5 §5.4(d)(3). DHS also assigned the following reference number to the FOIA Request: 2018-HQFO-00459.

20.        On February 16, 2018, via electronic mail ("2/26/2018 ICE E-Mail"), ICE acknowledged receipt of Advancement Project's FOIA Request, invoked a ten-day extension for this request beyond the 20-day standard time period for response, and notified Advancement Project that ICE would charge fees for production in accordance with rates applicable to commercial requests, thereby denying Advancement Project's requested fee waiver. Additionally, ICE denied Advancement Project's request for expedited processing.[14] ICE also assigned the following reference number to the FOIA Request: 2018-ICFO-20234. The FOIA fee waiver appeal was assigned tracking number 2018-ICAP-00254.

---

[14] Advancement Project decided not to appeal ICE's denial of the expedited processing request.

21.     In an April 16, 2018 letter, Advancement Project appealed the ICE's categorization of Advancement Project as a commercial requester as well as the denial of the fee waiver request ("4/16/2018 Fee Waiver Appeal Letter").

22.     On May 11, 2018, after considering the appeal, ICE granted the fee waiver, noting in its letter ("5/11/2018 ICE Fee Waiver Letter") that this constituted ICE's final action as to the fee waiver request, but ICE did not make a determination as to the FOIA Request.

23.     On June 25, 2018, Advancement Project received an additional notice via electronic mail ("6/25/2018 ICE Additional Fee Waiver Letter") granting the fee waiver.

24.     To date, Advancement Project has received no additional communications from ICE regarding the FOIA Request.

25.     To date, aside from the 1/10/2018 DHS Letter acknowledging receipt of and referring this FOIA Request to ICE, Advancement Project has received no additional communications from DHS regarding this request.

26.     More than twenty working days have passed since ICE and DHS received the FOIA Request, and ICE and DHS have failed to make a determination on the FOIA Request and have not provided the records requested in the FOIA Request.

27.     Advancement Project has exhausted the applicable administrative remedies with respect to its FOIA Request to ICE and DHS.

28.     ICE and DHS have wrongfully withheld the requested records from Advancement Project.

## CAUSE OF ACTION

### FOIA Violation: Failure to Disclose and Release Responsive Records

29.     Advancement Project repeats and re-alleges each and every allegation contained in paragraphs 1 through 28 as if repeated and reincorporated herein.

30.     Advancement Project properly requested records that on information and belief are currently within the possession, custody, and control of ICE and DHS.

31.     ICE and DHS are agencies subject to FOIA, therefore they must make reasonable efforts to search for requested records.

32.     DHS has violated Advancement Project's right to DHS records under 5 U.S.C. § 552.

33.     ICE, a component of DHS, has violated Advancement Project's right to ICE records under 5 U.S.C. § 552.

34.     Advancement Project has exhausted all administrative remedies with respect to its FOIA Request for records under 5 U.S.C. § 552 (a)(6)(C)(i).

35.     Advancement Project has a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to the records it requested, and there is no legal basis for DHS and ICE's failure to disclose them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

   A.  Assume jurisdiction over this matter;

   B.  Declare that Defendants' withholding of the requested records is unlawful;

   C.  Order Defendants to immediately conduct a reasonable search for all responsive records and to make available all records responsive to the request;

D.  Order Defendants to grant Plaintiff a public interest fee waiver;

E.  Award Plaintiff costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552

   (a)(4)(E) and 24 U.S.C. § 2412; and

F.  Grant all other relief as the Court deems just and proper.

Dated: March 20, 2019                    Respectfully submitted,

                                         /s/ Losmin Jimenez
                                         DC Bar No. 198691
                                         Project Director and Senior Attorney for
                                         Immigrant Justice

                                         /s/ Gilda Daniels
                                         DC Bar No. 462819
                                         Director of Litigation

                                         LJimenez@advancementproject.org
                                         GDaniels@advancementproject.org

                                         Counsel for Plaintiff